IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVERSE MORTGAGE INVESTMENT TRUST INC., *et al.*,[1] | ) ) | Case No. 22-11225 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |
| | ) | **Re: Docket No. 242** |

**ORDER APPROVING THE STIPULATION GRANTING FANNIE MAE
LIMITED RELIEF FROM THE AUTOMATIC STAY
AND AUTHORIZING CERTAIN ADVANCES**

Upon consideration of the *Stipulation Granting Fannie Mae Limited Relief From the Automatic Stay and Authorizing Certain Advances* (the "Stipulation"),[2] attached hereto as **Exhibit 1**, between the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Federal National Mortgage Association ("Fannie Mae," and together with the Debtors, the "Parties"); and after due deliberation; and sufficient cause appearing therefor:

IT IS HEREBY ORDERED THAT:

1. The Stipulation is APPROVED in its entirety, pursuant to sections 105(a) and 362 of the Bankruptcy Code.

2. The Parties are authorized to consummate the terms of the Stipulation in accordance with its terms and provisions.

3. The automatic stay imposed by 11 U.S.C. § 362(a) in respect of the Debtors is hereby modified, for cause, to permit the termination of the Fannie Mae Lender Contract, for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Reverse Mortgage Investment Trust Inc. (3421); Reverse Mortgage Funding LLC (0209); RMIT Cash Management LLC (6241); RMIT Operating I LLC (1844); and RMIT Operating II LLC (2301). The location of the Debtors' service address for purposes of these chapter 11 cases is: 1455 Broad Street, 2nd Floor, Bloomfield, NJ 07003.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Stipulation.

cause, including, without limitation, providing the Company with written notice of such termination (the "Termination"), and the Fannie Mae MSR Transfer, pursuant to which Fannie Mae may retain the Fannie Mae MSRs or direct such Fannie Mae MSRs to one or more new servicers or subservicers, including the Current Subservicer, best suited to perform the servicing functions that the Company is no longer able to provide (each, including the Current Subservicer if applicable, a "New Servicer") and such other actions as may be reasonably necessary or useful to accomplish the Termination, the Third-Party Payments, and the Fannie Mae MSR Transfer.

4. Because the Termination is for cause in accordance with the Fannie Mae Lender Contract, among other rights of Fannie Mae thereunder, Fannie Mae may make the Termination effective immediately or on a date in the future.

5. The Company and the Current Subservicer and all other parties are authorized to cooperate in the Termination, the Third-Party Payments, and the Fannie Mae MSR Transfer without further order of the Bankruptcy Court, including, if applicable, the Current Subservicer's assumption of the role of New Servicer for the Fannie Mae Loans.

6. The Fannie Mae Custodial Accounts are not property of the Debtors' estates and may continue to be used after the Termination and Fannie Mae MSR Transfer by Fannie Mae, the Current Subservicer, and other third parties so designated by Fannie Mae.

7. The Debtors will comply with all reasonable instructions of Fannie Mae regarding the Fannie Mae MSR Transfer and will comply with all requirements necessary to effect such Fannie Mae MSR Transfer in accordance with the Fannie Mae Lender Contract, including but not limited to the transfer of all files and funds related to the Fannie Mae Loans and directing the Current Subservicer to cooperate with the Company and Fannie Mae to effect the Fannie Mae MSR Transfer in accordance with the Fannie Mae Lender Contract; *provided, however*, that

the foregoing shall not require a material financial outlay by the Debtors to currently pay out of pocket expenses that would not have been incurred but for the Stipulation, without further agreement of the Parties and approval of the Court.[3]

8. Other than as set forth in this Order or the Stipulation, the automatic stay shall remain in full force and shall not be modified.

9. Fannie Mae is authorized, but not obligated or directed, to fund the Third-Party Payments directly to the Current Subservicer. Any funds remitted by Fannie Mae to the Current Subservicer on account of Third-Party Payments shall not be property of the Debtors' estates and may continue to be used after the Termination and Fannie Mae MSR Transfer by Fannie Mae, the Current Subservicer, and other third parties so designated by Fannie Mae. No party shall have any lien on or claim to the funds remitted by Fannie Mae on account of Third-Party Payments other than the entities to which Fannie Mae directs such funds. To the extent Fannie Mae funds an applicable Third-Party Payment, Fannie Mae is relieved of any obligation to make such respective Third-Party Payment to the Debtors or their estates.

10. Notwithstanding anything herein to the contrary, all parties rights are fully reserved with respect to the terms of and ultimate consummation of any Settlement Agreement. Nothing in this Order or the Stipulation waives any claims or causes of action (i) that the Debtors or any other party in interest may have against Fannie Mae, including any claims for reimbursement or (ii) that Fannie Mae may have against the Debtors or any other party in interest. For the avoidance of doubt, nothing in this Order or the Stipulation prejudices or limits HUD's rights, if any, against any party.

---

[3] As set forth in Paragraph 10 hereof, Fannie Mae reserves all claims against the Debtors and their estates, including any claims that the Debtors are contractually required to pay costs and expenses that relate to the Fannie Mae MSR Transfer, and the Debtors reserve all defenses to any such claims.

11. The relief provided for herein shall only relate to the mortgages, loans, property and servicing rights related to the Fannie Mae Lender Contract and Fannie Mae MSRs; *provided*, *however*, that none of the relief provided for herein shall relate or apply to any mortgages, loans, property (including securities and collections) or servicing rights related to the Debtors' warehouse repo facilities or securities repo facilities, private label securitization trusts, or the TCB Repo Facility (as defined below), including, without limitation:

   i. That certain Master Repurchase Agreement, dated September 15, 2017, (as amended, restated, supplemented or otherwise modified from time to time, and together with all guarantees, schedules and exhibits thereto, Facility Documents (as defined therein) and confirmations exchanged pursuant to Transactions entered into in connection therewith, the "TIAA Agreement" or "TIAA Repo Facility"), by and between TIAA, FSB, formerly known as EverBank ("TIAA") and Reverse Mortgage Funding LLC;

   ii. The Credit Suisse Repo Facilities (as defined herein) and any loans, mortgages, property or servicing rights in any way related to (i) the Master Repurchase Agreement between Credit Suisse AG, Cayman Islands Branch and Reverse Mortgage Funding LLC, dated January 15, 2021, (ii) the Master Repurchase Agreement between Credit Suisse Securities (USA) LLC and Reverse Mortgage Funding LLC, dated January 15, 2021, (iii) the Master Repurchase Agreement between Credit Suisse AG, Cayman Islands Branch and RMIT Operating II LLC, dated March 1, 2022, (iv) the Master Repurchase Agreement between Credit Suisse Securities (USA) LLC and RMIT Operating II LLC, dated March 1, 2022, (v) the Master Repurchase Agreement between Credit Suisse First Boston Mortgage Capital LLC (as administrative agent), Credit Suisse AG, Cayman Islands Branch, Alpine Securitization LTD (along with certain other buyers) and Reverse Mortgage Funding LLC, dated September 30, 2022 and (vi) any and all other contracts, agreements or other documents entered into in connection with the foregoing (i) through (vi) (the foregoing (i) through (vi), collectively, the "Credit Suisse Repo Facilities");

   iii. That certain Amended and Restated Master Repurchase Agreement, by and between Nomura Corporate Funding Americas, LLC, Reverse Mortgage Funding LLC and Broad Street Funding Trust II, dated as of June 4, 2019; (ii) that certain Master Repurchase Agreement, by and between Nomura Securities International, Inc. and Reverse Mortgage Funding LLC, dated as of January 9, 2017, as amended; and (iii) that certain Master Repurchase Agreement, by and between Nomura Securities International, Inc. and RMIT Operating II LLC, dated as of May 26, 2015 (such agreements, in each case, together with all guarantees, schedules and exhibits thereto, and confirmations exchanged pursuant to transactions entered into in connection with any of the foregoing the

        "<u>Nomura Repo Facilities</u>" and the Nomura parties thereto, collectively, "<u>Nomura</u>");

iv. That certain Amended and Restated Master Repurchase Agreement, dated as of May 15, 2017 (as amended, restated, supplemented or otherwise modified from time to time), among Barclays Bank PLC as purchaser and agent ("<u>Barclays</u>"), Reverse Mortgage Funding LLC, as sellers, and Reverse Mortgage Investment Trust Inc, RMIT Operating I LLC, RMIT Operating II LLC, and RMIT Cash Management LLC, as guarantors (the "<u>Barclays Repo Facility</u>");

v. Those certain Sale and Servicing Agreements, by and among Reverse Mortgage Funding LLC in its capacity as seller and servicer, U.S. Bank National Association (or U.S. Bank Trust Company, National Association, as applicable) solely in its capacity as the indenture trustee and paying agent (collectively, "<u>US Bank</u>"), and certain other parties, and any related documents in connection therewith; and

vi. That certain Mortgage Warehouse Agreement, dated as of July 29, 2020 (as amended, supplemented or modified, and together with all schedules, guarantees, ancillary agreements, and exhibits thereto, the "<u>TCB Repo Facility</u>") by and between Reverse Mortgage Funding LLC as Seller and Texas Capital Bank as Bank.

12. The relief granted herein shall be binding upon the Debtors, any subsequently appointed trustee or any estate representative.

13. The Debtors are hereby authorized to take such further actions as are necessary to facilitate the Third-Party Payments and the Fannie Mae MSR Transfer as set forth herein.

14. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising from or related to this Order or the Stipulation.

15. This Order approving the Stipulation shall become effective immediately upon entry, notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, and the automatic stay provisions of Fed. R. Bankr. P. 4001(a)(3) are hereby waived and dispensed with.

**Dated: December 20th, 2022**  
**Wilmington, Delaware**

                                        **MARY F. WALRATH**  
                                        **UNITED STATES BANKRUPTCY JUDGE**