## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVERSE MORTGAGE INVESTMENT TRUST INC., *et al.*,[1] | Case No. 22-11225 (MFW) |
| Debtors. | (Jointly Administered) |

## FINDINGS OF FACT,
## CONCLUSIONS OF LAW, AND ORDER
## (I) APPROVING THE ADEQUACY OF THE DISCLOSURE
## STATEMENT AND (II) CONFIRMING THE THIRD AMENDED
## JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR REVERSE
## MORTGAGE INVESTMENT TRUST INC. AND ITS DEBTOR SUBSIDIARIES

Reverse Mortgage Investment Trust, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] having:

a.   commenced, on November 30, 2022 (the "Petition Date"), these chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.   continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   obtained, on January 4, 2023, the *Order (I) Authorizing Rejection of (A) Certain Executory Contracts as of the Petition Date, (B) Unexpired Leases on Nonresidential Real Property as of the Lease Rejection Date, (II) Approving Procedures for Future Rejection of Additional Executory Contracts and Unexpired*

---

[1]   The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Reverse Mortgage Investment Trust Inc. (3421); Reverse Mortgage Funding LLC (0209); RMIT Cash Management LLC (6241); RMIT Operating I LLC (1844); and RMIT Operating II LLC (2301). The location of the Debtors' service address for purposes of these chapter 11 cases is: 1455 Broad Street, 2nd Floor, Bloomfield, NJ 07003.

[2]   All capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

*Leases, and (III) Granting Related Relief* [Docket No. 297] (the "First Rejection Order");

d.    filed,[3] on February 21, 2023, the *Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 482], the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 483], and the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Proposed Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 481] (the "Disclosure Statement Motion");

e.    obtained, on February 23, 2023, the *Order (I) Approving 9019 Settlement By and Among the Debtors, the Official Committee of Unsecured Creditors, and BNGL Holdings, L.L.C. and Certain of its Affiliates and (II) Granting Related Relief* [Docket No. 499] (the "9019 Order," and such settlement, the "9019 Settlement");

f.    obtained, on March 14, 2023, the *Order Approving the Rejection of Unexpired Leases* [Docket No. 534] (the "Second Rejection Order");

g.    filed, on March 20, 2023, the *Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 553] and the *Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 554];

h.    filed, on March 21, 2023, the *Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 566] and the *Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 567];

i.    obtained, on March 22, 2023, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Proposed Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. 575] (the "Disclosure Statement Order") conditionally approving the Disclosure Statement, solicitation procedures (the "Solicitation

---

[3]   Unless otherwise indicated, the use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

j.      filed, on March 22, 2023, the *Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 576] (as filed, the "Solicitation Plan," and, together with further modifications, amendments, or supplements from time to time, the "Plan");

k.      filed, on March 22, 2023, the *Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 577] (the "Disclosure Statement");

l.      obtained, on March 23, 2023, the *Order Approving the Rejection of Executory Contracts* [Docket No. 584] (the "Third Rejection Order, and collectively with the First Rejection Order and the Second Rejection Order, the "Rejection Orders");

m.      caused the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan ("Confirmation") to be distributed on or about March 23, 2023 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 617] (the "Affidavit of Solicitation");

n.      caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published, on March 27, 2023, in *The New York Times*, as evidenced by the *Certificate of Publication* [Docket No. 613] (the "Publication Affidavit," and together with the Affidavit of Solicitation, the "Affidavits");

o.      filed, on March 13, 2023, the *Notice of Filing Plan Supplement* [Docket No. 637] (as modified, amended, or supplemented from time to time, the "Plan Supplement"), caused notice of the filing of the Plan Supplement to be distributed, and delivered certain solicitation and Plan Supplement documents in accordance with paragraph 5 of the Disclosure Statement Order, as evidenced by, among other things, related affidavits of service [Docket Nos. 674 and 678];

p.      filed, on March 20, 2023, the *Motion of the Debtors for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving the Settlement Ny and Among the Debtors and Compu-Link Corporation, D/B/A Celink and Certain of its Affiliates* [Docket No. 659] (the "Celink Settlement");

q.      filed, on April 24, 2023, the *Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and Its Debtor Subsidiaries* [Docket No. 683];

r.      filed, on April 24, 2023, the *Debtors' Memorandum of Law in Support of the Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 685] (the "<u>Confirmation Brief</u>");

s.      filed, on April 24, 2023, the *Declaration of on Behalf of Alex Orchowski of Kroll Restructuring Administration LLC Regarding Service of Solicitation Packages and Tabulation of Ballots Case on the Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 685-4];

t.      filed, on April 24, 2023, the *Declaration of Tanya Meerovich in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 685-2] (the "<u>Meerovich Declaration</u>");

u.      filed, on April 24, 2023, the *Declaration of Patrick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 685-3] (the "<u>Bartels Declaration</u>," and, together with the Voting Report, and the Meerovich Declaration, the "<u>Declarations</u>");

v.      filed, on April 26, 2023, the *Modified Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 703];

w.     filed, on April 27, 2023, the *Amended Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 709) (the "<u>Voting Report</u>");

x.      filed, on April 27, 2023, the *Third Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 713]; and

y.      filed, on April 27, 2023, the *Supplemental Declaration of Tanya Meerovich in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and its Debtor Subsidiaries* [Docket No. 715].

The Court having:

z.      entered the Disclosure Statement Order on March 22, 2023 [Docket No. 575];

aa.    set April 20, 2023 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Disclosure Statement and/or the Plan;

4

bb.    set April 20, 2023 at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan;

cc.    set April 27, 2023 at 10:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

dd.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Declarations, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

ee.    held the Confirmation Hearing;

ff.    heard the statements and arguments made by counsel with respect to Confirmation;

gg.    considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

hh.    entered rulings on the record at the Confirmation Hearing held on April 28, 2023 (the "Confirmation Ruling");

ii.    overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

jj.    taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 109],

these Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

**E.    Appointment of the Creditors' Committee.**

5.    On December 13, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors (the "Committee") [Docket No. 191].

**F.    Judicial Notice, Objections Overruled.**

6.    The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan or Confirmation are overruled on the merits.

**G.    Disclosure Statement Order.**

7.    On March 22, 2023, the Court entered the Disclosure Statement Order [Docket No. 575], which, among other things, fixed April 20, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline"), April 20, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting to accept or reject the Plan (the "Voting

Deadline"), and April 27, 2023, at 10:30 a.m. (prevailing Eastern Time) as the date and time for

the commencement of the Confirmation Hearing.

**H.    Adequacy of Disclosure Statement.**

8.      The Disclosure Statement contains adequate information within the meaning of

section 1125 of the Bankruptcy Code and is approved on a final basis.

**I.    Burden of Proof—Confirmation of the Plan.**

9.      The Debtors, as proponents of the Plan, have met their burden of proving

the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**J.    Notice.**

10.     The Debtors provided due, adequate, and sufficient notice of the Disclosure

Statement, the Disclosure Statement Order, the Plan, the Solicitation Packages, the Confirmation

Hearing Notice, the proposed assumption and rejection of Executory Contracts and Unexpired

Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in

connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting

Deadline, and the Confirmation Hearing, and any applicable bar dates and hearings described in

the Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and

the procedures set forth in the Disclosure Statement Order.  No other or further notice is or shall

be required.

**K.    Solicitation.**

11.     Before the Confirmation Hearing, the Debtors filed the Voting Report.  The Voting

Report was admitted into evidence during the Confirmation Hearing.  As described in the Voting

Report, the solicitation of votes on the Plan complied with the solicitation procedures set forth in

the Disclosure Statement Motion and approved in the Disclosure Statement Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.

12.     As described in the Solicitation Affidavit, the Voting Report, and the Declarations, as applicable, following the Petition Date, the Solicitation Packages, and the Confirmation Hearing Notice were transmitted and served, including to all Holders of Claims in Class 3, Class 4, Class 5, Class 6, Class 7, Class 8, and Class 9 (collectively, the "Voting Classes"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law.   Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient.   No further notice is required.

13.     As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim as of March 21, 2023 (the date specified in such documents for the purpose of solicitation).   The establishment and notice of the Voting Record Date (as defined in the Disclosure Statement Motion) were reasonable and sufficient.

14.     The period during which Holders in the Voting Classes had to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

15.     As set forth in the Plan, Holders of Claims in the Voting Classes were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Class 1 and Class 2 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively

presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of

Intercompany Interests in Class 11 either are Unimpaired and conclusively presumed to have

accepted the Plan (to the extent Reinstated) or Impaired and conclusively presumed to have

rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of

Claims in Class 10 and Holders of Interests in Class 12 (the "Deemed Rejecting Classes") are

Impaired under the Plan, are entitled to no recovery thereunder, and are therefore deemed to have

rejected the Plan.  Nevertheless, the Debtors served Holders in such Deemed Rejecting Classes

with the Plan, the Disclosure Statement, and the Confirmation Hearing Notice.

**L.    Voting.**

16.    As evidenced by the Voting Report, votes to accept or reject the Plan have been

solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any applicable non-

bankruptcy law, rule, or regulation.

17.    As evidenced by the Voting Report, Class 3, Class 4, Class 5, Class 6, Class 7,

Class 8, and Class 9 voted to accept the Plan in accordance with section 1126 of the Bankruptcy

Code.

18.    Based on the foregoing, and as evidenced by the Voting Report, at least one

Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has

voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of

the Bankruptcy Code.

**M.    Plan Supplement.**

19.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan,

and the filing and notice of the documents included in the Plan Supplement are adequate and proper

in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and this Confirmation Order, the Debtors shall have the right to alter, amend, update, or modify the Plan Supplement through the Effective Date.

**N.      Modifications to the Plan.**

20.      Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Solicitation Plan included in the *Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and Its Debtor Subsidiaries* filed on April 24, 2023, and any additional modifications described or set forth in this Confirmation Order or in any Plan filed prior to this Confirmation Order (collectively, the "Plan Modifications") constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

21.      In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to

the Solicitation Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**O.      Bankruptcy Rule 3016.**

22.      The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**P.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

23.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

**(i)          Proper Classification—Sections 1122 and 1123.**

24.      The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into 12 Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(ii)       Specified Unimpaired Classes—Section 1123(a)(2).**

25.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

| Class | Designation |
| --- | --- |
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 11 | Intercompany Interests (to the extent Reinstated) |

26.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims (including all fees and charges assessed against the Estates under 28 U.S.C. § 1930), Allowed DIP Secured Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims will be paid in full (unless a Holder of such claims consents to alternative treatment) in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan; *provided, however,* that the recoveries on account of any Allowed Administrative Claims of TCB, Leadenhall (if any), and the WARN Claimants may be materially impacted by the ongoing issues between TCB and GNMA, as set forth in the Disclosure Statement; *provided further* that such parties have communicated on the record at the Confirmation Hearing that they consent to the entry of the Confirmation Order notwithstanding this possibility.

**(iii)       Specified Treatment of Impaired Classes—Section 1123(a)(3).**

27.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
| --- | --- |

| | |
|---|---|
| 3 | BNGL Holdings Note Claims |
| 4 | Barclays Warehouse Repo Facility Claims |
| 5 | CS Claims |
| 6 | Nomura Claims |
| 7 | TCB Prepetition Claims |
| 8 | TIAA Warehouse Repo Facility Claims |
| 9 | General Unsecured Claims |
| 10 | Intercompany Claims |
| 11 | Intercompany Interests (to the extent not Reinstated) |
| 12 | RMIT Existing Equity Interests |

**(iv)**        **No Discrimination—Section 1123(a)(4).**

28. The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(v)**        **Adequate Means for Plan Implementation—Section 1123(a)(5).**

29. The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the consummation of the Plan, including the Wind-Down Transactions and the vesting of assets in the Wind-Down Debtors; (b) the sources of consideration for Plan distributions; (c) the authorization for the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (d) the settlement and discharge of Claims and Interests as set forth in the Plan; and (e) the preservation and vesting of certain Causes of Action in the Plan Administrator.

### (vi)        Voting Power of Equity Securities—Section 1123(a)(6).

30.    The Plan does not provide for the issuance of equity or other securities of the Debtors or the Wind-Down Debtors, including non-voting equity securities. Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable.

### (vii)        Directors and Officers—Section 1123(a)(7).

31.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.E.7 of the Plan, as of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required. As of the Effective Date, the Plan Administrator shall act as the sole officer, director, manager, and Governing Body, as applicable, of the Debtors and the Wind-Down Debtors with respect to their affairs. The selection of the Plan Administrator is consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### (viii)        Impairment / Unimpairment of Classes—Section 1123(b)(1).

32.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

### (ix)        Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

33.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan or the Plan Supplement. The Debtors' determinations regarding the assumption and rejection of Executory

Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

        **(x)**        **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

34.    The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

        **(xi)**        **Additional Plan Provisions—Section 1123(b)(6).**

35.    The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**Q.**    **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

36.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

    a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

    b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and

all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.      Plan Proposed in Good Faith—Section 1129(a)(3).**

37.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the 9019 Settlement, the Celink Settlement, the process leading to Confirmation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Wind-Down Transactions and all other contemplated actions and transactions and maximize the value of the Estates and the recoveries to Holders of Claims and Interests.

**S.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

38.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.      Directors, Officers, and Insiders—Section 1129(a)(5).**

39.    Because the Plan provides for the dissolution of the existing board of directors or managers, as applicable, of the Debtors and that any remaining directors or officers of the Debtors shall be dismissed, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors. To the extent section 1129(a)(5) applies to the Wind-Down Debtors, they have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Plan Administrator.

**U.      No Rate Changes—Section 1129(a)(6).**

40.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**V.      Best Interest of Creditors—Section 1129(a)(7).**

41.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that were proffered or adduced in the Declarations or at, prior to, or in connection with the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**W.      Acceptance by Certain Classes—Section 1129(a)(8).**

42.      Classes 1, 2, and 11 (to the extent Reinstated) are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed

Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**X. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

43. The treatment of Allowed Administrative Claims, Allowed DIP Secured Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims, under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code; *provided, however*, that the recoveries on account of any Allowed Administrative Claims of TCB, Leadenhall (if any), and the WARN Claimants may be materially impacted by the ongoing issues between TCB and GNMA, as set forth in the Disclosure Statement; *provided further* that such parties have communicated on the record at the Confirmation Hearing that they consent to the entry of the Confirmation Order notwithstanding this possibility.

**Y. Acceptance By At Least One Impaired Class—Section 1129(a)(10).**

44. The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**Z. Feasibility—Section 1129(a)(11).**

45. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared,

presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Wind-Down Debtors and the Plan Administrator, as applicable, will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash to reasonably ensure payment of, among other things, Allowed Claims, Allowed Administrative Claims (unless a Holder of such claims consents to alternative treatment), Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, Allowed BNGL Holdings Note Claims, Allowed Barclays Warehouse Repo Facility Claims, Allowed CS Claims, Allowed Nomura Claims, Allowed TCB Prepetition Claims, Allowed TIAA Warehouse Repo Facility Claims, Allowed Leadenhall MSR Facility Claims, Allowed General Unsecured Claims, and the Allowed Interests in any Debtor entity that will receive cash distributions pursuant to the terms of the Plan and other expenses in accordance with the terms of the Plan and section 507(a) of the Bankruptcy Code; and (e) establishes that the Wind-Down Debtors and the Plan Administrator, as applicable, will have the financial wherewithal to satisfy their obligations following the Effective Date.

**AA.    Payment of Statutory Fees—Section 1129(a)(12).**

46.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.A of the Plan provides for the payment of all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

**BB.   Continuation of Employee Benefits—Section 1129(a)(13).**

47.    The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).   Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**CC.   Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

48.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.   The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.   "Cram Down" Requirements—Section 1129(b).**

49.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.   *First,* all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.   *Second,* the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Specifically, to the extent Class 11 Intercompany Interests is Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Claims and/or Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes.   *Third,* the Plan does not discriminate unfairly with respect to

the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE.    Only One Plan—Section 1129(c).**

50.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

**FF.    Principal Purpose of the Plan—Section 1129(d).**

51.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG.    Not Small Business Cases—Section 1129(e).**

52.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**HH.    Good Faith Solicitation—Section 1125(e).**

53.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**II.    Satisfaction of Confirmation Requirements.**

54.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**JJ.    Limited Substantive Consolidation.**

55.    Section III.C of the Plan provides for the limited substantive consolidation of the Debtors solely for the purposes of the Plan, including making any distributions to Holders of Claims and Interests.  Based on the record of these Chapter 11 Cases, the acceptance of the Plan by various Voting Classes, and in the absence of any objections by parties impacted by the consolidation to such request, this Court finds that such substantive consolidation of the Debtors and their Estates is justified and appropriate in these Chapter 11 Cases for purposes of the Plan.

**KK.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

56.    Each of the conditions precedent to the Effective Date, as set forth in Article X of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article X of the Plan.

**LL.    Implementation.**

57.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**MM.    Executory Contracts and Unexpired Leases.**

58.    The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan.  The Debtors have provided sufficient evidence of adequate assurance of future performance for each of the Executory Contracts and Unexpired Leases that are being assumed, or assumed and assigned, by the Debtors or the Purchaser pursuant to the Plan.  The Debtors have cured or provided adequate assurance that the Debtors, the Wind-Down Debtors, or the Purchaser as applicable, will cure any defaults (including by paying any Cure claims) under or relating to each of the Executory Contracts or Unexpired Leases that are being assumed by the Debtors or the Purchaser pursuant to the Plan.  Subject to the satisfaction of any applicable Cure claim as set forth in Article V of the Plan, each assumption, assumption and assignment, or rejection of an Executory Contract or Unexpired Lease pursuant to this Confirmation Order and in accordance with Article V of the Plan, or otherwise by order of this Court (including the Rejection Orders), shall be legal, valid, and binding upon the Debtors or the Wind-Down Debtors, as applicable, and all non-Debtor persons or entities party to such Executory Contract and Unexpired Lease.

**NN.    Disclosure of Facts.**

59.    The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors or the Wind-Down Debtors, as applicable.

**OO.   Good Faith.**

60.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order, including with respect to the Wind-Down Transactions.  The Released Parties have made a substantial contribution to these Chapter 11 Cases and with respect to the Plan and the actions and transactions contemplated thereby.

**PP.   Essential Elements of the Plan.**

61.     Article IX.E of the Plan describes certain releases granted by the Debtors, the Wind-Down Debtors, the Plan Administrator, and their Estates (the "Debtor Release"). The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests.  The pursuit by the Debtors, the Wind-Down Debtors, the Plan Administrator, or their Estates of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtor Release is therefore the result of an arm's-length negotiation process.  Also, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released in Article IX.E of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors' asserting any Claim or Cause of Action released by Article IX.E of the Plan.  In light of, among

other things, the value provided by the Released Parties to the Debtors' Estates and the critical

nature of the Debtor Release to the Plan, the Debtor Release is approved.

62.     Article IX.F of the Plan describes certain releases granted by the Releasing Parties

(the "Third-Party Release").    The Third-Party Release provides finality for the Debtors,

the Wind-Down Debtors, the Plan Administrator, and the other Released Parties regarding

the parties' respective obligations under the Plan, the Wind-Down Transactions, and with respect

to the Wind-Down Debtors.  The Third-Party Release is consensual with respect to the Releasing

Parties.  The Confirmation Hearing Notice sent to Holders of Claims and Interests and published

in *The New York Times* on March 27, 2023, and the ballots and notice, as applicable, sent to

Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party

Release and that each Holder of Claims or Interests may elect not to grant such Third Party Release.

Such release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan,

the Disclosure Statement, and the ballots and notices.   Among other things, the Plan provides

appropriate and specific disclosure with respect to the claims and Causes of Action that are subject

to the Third-Party Release, and no other disclosure or notice is necessary.  The Third-Party Release

is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best

interests of the Debtors, the Debtors' estates, and all Holders of Claims and Interests.   Also,

the Third-Party Release is: (a) in exchange for the good and valuable consideration provided by

the Released Parties; (b) a good faith settlement and compromise of the Claims released by

the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims and

Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity

for hearing; (f) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action

released pursuant to the Third-Party Release; and (g) consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.

63.     The exculpation described in Article IX.G of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, each Exculpated Party is hereby released and exculpated as set forth in the Plan.  The Exculpated Parties have participated in any and all activities potentially underlying any Claim subject to the Exculpation in good faith and in compliance with the applicable laws.  The Exculpation is consistent with established practice in this jurisdiction and others.

64.     The injunction provision set forth in Article IX.H of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

65.     Article IV.E.11 of the Plan appropriately provides that, unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan, *provided, however*, that the Committee may pursue certain Causes of Action upon the receipt of prior written consent of the Plan Administrator with respect to such Causes of Action. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair,

equitable, and reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

66.     The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property described in Article IX.D of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

67.     **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

68.     **Solicitation.**  The solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

69.     **Confirmation Hearing Notice.**  The Confirmation Hearing Notice was appropriate and satisfactory and is approved in all respects.

70.     **Final Approval of Disclosure Statement.**  The Disclosure Statement: (i) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in

section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein; and (ii) is approved on a final basis.

71.    **Limited Substantive Consolidation.**    The limited substantive consolidation of the Debtors, as set forth in Article III.C of the Plan, for purposes of confirming and consummating the Plan, is approved.

72.    **Confirmation of the Plan.**    The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

73.    **Objections.**    All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.  Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except as agreed in writing with respect to any unresolved Cure amounts), if any, related to the Disclosure Statement, the Plan, or Confirmation are overruled on the merits in all respects, unless otherwise set forth in this Confirmation Order.  All objections to Confirmation not Filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

74.    **Plan Modifications.**    The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.  After giving effect to the Plan Modifications, the Plan continues to meet the requirements of

sections 1122 and 1123 of the Bankruptcy Code.  The filing with the Court on April 24, 2023 of the *Second Amended Joint Chapter 11 Plan of Liquidation for Reverse Mortgage Investment Trust Inc. and Its Debtor Subsidiaries* and the disclosure of additional Plan Modifications in subsequent versions of the Plan filed prior to this Confirmation Order and on the record at the Confirmation Hearing, if any, constitute due and sufficient notice thereof.   Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

75.    **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

76.    **No Action Required.**  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Wind-Down Transactions or any other action or transaction contemplated by the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

77.    **Binding Effect.**  Upon the occurrence of the Effective Date, and subject to any provisions with respect to the Leadenhall Claims Status Notice, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Wind-Down Debtors, the Plan Administrator, and any and all Holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether or how any Holder of a Claim or debt has voted on the Plan; *provided*, that any Claim arising in connection with the Disputed Issues shall not be fixed, adjusted, or compromised until after the Disputed Issues have been adjudicated or settled.

78.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, and their respective successors and assigns.

79.    **Vesting of Assets.**  Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on

the Effective Date, the assets of the Debtors shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided for in this Confirmation Order or the Plan, the Wind-Down Debtors may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, Avoidance Actions, or Causes of Action.

80.     In the event the Debtors, or the Wind-Down Debtors, as applicable, elect to establish a liquidating trust pursuant to Article IV.E.6 of the Plan, then as soon as possible after the transfer of the applicable assets of the Debtors to the liquidating trust, the trustee(s) of the liquidating trust shall make a good faith valuation of such assets. This valuation would be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, or the Wind-Down Debtors, as applicable, the trustee(s) of the liquidating trust, and the holders of Claims receiving interests in the liquidating trust shall take consistent positions with respect to the valuation of the assets transferred to the liquidating trust, and such valuations shall be utilized for all U.S. federal income tax purposes. The liquidating trust would file annual information tax returns with the IRS as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the assets of the liquidating trust (*e.g.*, income, gain, loss, deduction and credit). Each liquidating trust beneficiary holding a beneficial interest in the liquidating trust would receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the liquidating trust would pertain to liquidating trust beneficiaries who receive their interests in the liquidating trust in connection with the Plan.

81.     **Effectiveness of All Actions.** All actions contemplated by the Plan are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under

this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

82. **Wind-Down Transactions.** The Debtors or the Wind-Down Debtors, as applicable, are authorized to enter into and effectuate the Wind-Down Transactions, including the entry into and consummation of the transactions contemplated thereunder, and may take any actions as may be necessary, advisable, or appropriate to effectuate the Wind-Down Transactions, as and to the extent provided in the Plan. Any transfers of assets or equity interests effected or any obligations incurred through the Wind-Down Transactions are hereby approved. Such transfers and obligations are made for reasonably equivalent value and fair consideration under the Bankruptcy Code, any other laws of the United States, and the laws of any state, territory, possession, and the District of Columbia, and they shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Except as otherwise provided in the Plan, each Wind-Down Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

83. **Government Approvals Not Required.** Except if explicitly stated otherwise in the Plan or this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other

governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

84.     **Indemnification.**  All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, insurance policies, or otherwise) for the current and former directors, officers, managers, employees, attorneys, investment bankers, and other professionals of the Debtors (the "Indemnified Parties"), as applicable, shall be assumed by the Wind-Down Debtors or the Plan Administrator, as applicable, and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose, *provided, however*, that any such Indemnified Parties may only seek relief or indemnification from the applicable insurance policies and available third-parties, and not from the Plan Administrator Assets.

85.     **Cancellation of Existing Agreements and Interests.**  On the Effective Date, except with respect to the extent otherwise provided in the Description of the Transaction Steps, the Plan, or this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full.  Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments,

securities, and other documentation, or the satisfaction thereof, except the rights provided for pursuant to the Plan.  For the avoidance of doubt, to the extent such notes, instruments, certificates, and other documents evidence Administrative Claims asserted by Leadenhall, they shall not cancelled, nor shall the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto be deemed satisfied in full, cancelled, discharged, released, and of no force or effect, until the effective date of the Leadenhall Claims Status Notice (unless the applicable parties consent otherwise).

86.     **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent, at the consent and direction of the Plan Administrator, shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

87.     **Plan Reserve Account**.  Except to the extent required to fund the Plan Administrator Operating Reserve, the funds in the Plan Reserve Account shall not be distributed until the entry of a final order of the Bankruptcy Court adjudicating the Disputed Issues (including, without limitation, whether Leadenhall has valid Liens on any portion of TCB's DIP Collateral) (the "Disputed Issues Order"); *provided*, that (a) in the event that the entry of the Disputed Issues Order is anticipated to occur after the Effective Date, the Debtors or their successors may file a motion on regular notice with the Bankruptcy Court to seek release of some or all of the Plan Reserve Account on or after the Effective Date and (b) nothing in this paragraph 87 shall alter or modify the terms of paragraph 128 hereof.

88.    **Claims Register.**  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Wind-Down Debtors, or the Plan Administrator without an objection having to be Filed and without any further notice to or action, order, or approval of the Court.  Kroll Restructuring Administration LLC, the Debtors' notice and claims agent, is directed to adjust or expunge such Claims in the Claims Register, as applicable.

89.    **Preservation of Causes of Action.**  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (such as the 9019 Order), in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, including but not limited to the Causes of Action included in the Schedule of Retained Causes of Action and any and all payments made within the 90-day period prior to the Petition Date as referenced by the Debtors in the Schedules, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan and subject to the releases provided in the 9019 Order.  The Plan Administrator, in consultation with the Plan Advisory Committee, may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may, in its reasonable business judgment, and in consultation with the Plan Advisory Committee, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis.  No Entity may rely on the

absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Plan Administrator, in consultation with the Plan Advisory Committee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Court.

90. **Subordination.** The allowance, classification, and treatment of all Allowed Claims and Allowed Interests (as applicable) and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Wind-Down Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest

(as applicable) in accordance with any contractual, legal, or equitable subordination relating thereto.

91.     **Release of Liens.**   Except as otherwise expressly provided in the Plan or in this Confirmation Order, on the Effective Date, all Liens on any property of any Debtors or the Wind-Down Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Wind-Down Debtors shall be automatically released.  For the avoidance of doubt, (a) pursuant to and consistent with the CS Stipulation, nothing in the Plan or this Confirmation Order shall modify or release any lien of Credit Suisse on the property or collateral provided pursuant to, and in connection with, the CS Repos, (b) nothing in the Plan shall modify or release any lien held by Nomura on the property or collateral (and proceeds thereof) provided pursuant to, and in connection with, the Nomura Agreements, (c) nothing in the Plan shall modify or release any lien held by TIAA on the property or collateral under or in connection with the TIAA Warehouse Repo Facility, (d) nothing in the Plan shall modify or release any lien held by TCB, (e) nothing in the Plan shall modify or release any lien asserted by Leadenhall, so long as such lien is valid or Disputed Issues relating to such lien (including whether such liens constitute valid liens on an portion of TCB's DIP Collateral) remain pending adjudication or settlement, and for the further avoidance of doubt, to the extent any Wind-Down Transaction contemplates the sale or other transfer of collateral subject to such liens, such liens shall attach to the proceeds of such transaction (unless the applicable parties consent otherwise); and (f) nothing herein shall modify or release any lien held by BNGL Holdings on the property or collateral under or in connection with the BNGL Holdings Repo Facility Secured Claim until such collateral is delivered to BNGL Holding pursuant to Section III.B.1(b) of the Plan.

92.     **General Settlement of Claims and Interests.**   Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan; *provided, however*, that the provisions of the Plan shall not constitute a good-faith compromise and settlement of Administrative Claims asserted by Leadenhall unless and until such Claims are paid in full to the extent Allowed, regardless of whether such Claims are Allowed before or after the Effective Date (unless the applicable parties consent otherwise); *provided*, that any provisions under the Plan that are subject to the effective date of the Leadenhall Claims Status Notice shall not be deemed effective until the effective date of the Leadenhall Claims Status Notice.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of this Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Notwithstanding any other provision in the Plan or Confirmation Order, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement agreement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

93.     **Operations After Closing.**  On and after the Effective Date, except as otherwise provided in the Plan and this Confirmation Order, the Wind-Down Debtors may operate their business and use, acquire, or dispose of property and compromise or settle any Claims, Interests,

or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, in consultation with the Plan Advisory Committee and in accordance with the Plan Administrator Agreement and this Confirmation Order.

94.     **Assumption and Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided in the Plan, in the Plan Supplement, or in this Confirmation Order, each Executory Contract and Unexpired Lease that is not assumed or assigned or identified on the Assumed Executory Contracts and Unexpired Leases Schedule shall be deemed automatically rejected as of the Effective Date.

95.     Such automatic assumption or rejection, as applicable, shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contracts and Unexpired Leases that: (a) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (b) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Lease) that is pending on the Effective Date; (c) are a contract, release, or other agreement or document entered into in connection with the Plan, or otherwise assumed under the Plan; or (d) is a D&O Liability Insurance Policy.  The assumption or rejection of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts to Affiliates.  This Confirmation Order constitutes an order of the Court approving, subject to and upon the occurrence of the Effective Date, the above-described assumptions and assumptions and assignments, or rejections, as applicable.  Any Filed motions to assume, assume and assign, or reject any Executory Contracts or Unexpired Leases (or Filed objection with respect to the

proposed assumption and assignment of such contract) that is pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors or the Plan Administrator, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

96.     Except as otherwise provided in the Plan or in this Confirmation Order or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

97.     Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or the Plan Supplement, the current and former directors, officers, and, managers of the Debtors shall be released from any and all non-compete, non-solicit, and similar obligations or liabilities associated therewith, including, without limitation, arising from and in connection with any non-compete agreement between such directors, officers, and, managers and the Debtors, which shall not be included in the Assumed Executory Contracts and Unexpired Leases Schedule and shall be rejected pursuant to the Plan and this Confirmation Order.

98.     **Adjustments to Rejection and Assumption.** Notwithstanding the preceding four paragraphs of this Confirmation Order, on or before the Effective Date, the Debtors, the Wind

Down Debtors, and the Plan Administrator, as applicable, may reject or assume (or direct the rejection or assumption of) additional Executory Contracts and Unexpired Leases of or relating to the Debtors, the Wind-Down Debtors, and/or the Plan Administrator, including Executory Contracts and Unexpired Leases that have previously been identified for assumption or rejection, as the case may be, to the extent such rejection or assumption is not otherwise inconsistent with this Confirmation Order.  The Debtors or Wind-Down Debtors, as applicable, shall promptly provide notice of such rejection or assumption to applicable counterparties in a manner substantially similar to the applicable form of notice approved in the Disclosure Statement Order, and such counterparties shall have fourteen (14) days to file and serve any objection to the proposed rejection or assumption or to the Cure amount identified in such notice.  Any rejection or assumption of an Executory Contract or Unexpired Lease pursuant to this paragraph shall be effective as of the Effective Date, unless the parties agree or the Court determines otherwise.

99.    **Waiver or Estoppel.**  Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as a Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.  For the avoidance of doubt, Leadenhall shall not be deemed to have waived any such right with respect to the Disputed Leadenhall Claims.

100.    **Authorization to Consummate.**    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by

the required parties) of the conditions precedent to Consummation set forth in Article X of the Plan.

101.    **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court.  Once approved by the Court, the Allowed Professional Fee Claims shall be paid promptly by the Disbursing Agent in Cash.  To the extent the funds held on account of the Professional Fee Reserve Amount are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the full unpaid amount of such Allowed Administrative Claim shall be paid promptly in Cash.  To the extent the funds held on account of the Professional Fee Reserve Amount are in excess of the aggregate amount of Allowed Professional Fee Claims, such excess amount shall be paid to BNGL Holdings on account of its DIP Secured Claim as set forth in Section II.B of the Plan.

102.    **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Wind-Down Debtors or the Plan Administrator, as applicable, promptly following the occurrence of the Effective Date, if not returned or applied earlier.

103.    **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and

authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein; *provided*, that any provisions under the Plan that are subject to the effective date of the Leadenhall Claims Status Notice shall not be deemed effective until the effective date of the Leadenhall Claims Status Notice.

104.   **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Wind-Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

105.   Any party entitled to receive any property as an issuance or distribution hereunder shall, upon request, deliver to the Plan Administrator or Wind-Down Debtors an IRS Form W-9 or, if the payee is a foreign entity, an applicable ISR Form W-8.  If such request is made by the Plan Administrator, the Disbursing Agent withholds a distribution to the payee until the payee complied with the request, and the payee fails to comply before the date that is 120 days after the request is

made, the amount of such distribution shall irrevocably revert to the Wind-Down Account and any

Claim or Interest in respect of such distribution shall be released.

106.    **Section 1146 Exemption.**   To the fullest extent permitted by section 1146(a) of

the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any

other Person) of property under the Plan, if applicable, or pursuant to: (1) the issuance,

reinstatement, distribution, transfer, or exchange of any debt, or other Interest in the Debtors or

the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) the creation, modification,

consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other

security interest, or the securing of additional indebtedness by such or other means; (4) the making,

assignment, or recording of any lease or sublease; (5) the making, delivery, or recording of any

deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

including any deeds, bills of sale, assignments, or other instrument of transfer executed in

connection with any transaction arising out of, contemplated by, or in any way related to the Plan,

shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial

Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental

assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental

officials or agents shall forego the collection of any such tax or governmental assessment and

accept for filing and recordation any of the foregoing instruments or other documents without

the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording

officers (or any other Person with authority over any of the foregoing), wherever located and by

whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy

Code, shall forego the collection of any such tax or governmental assessment, and shall accept for

filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

107.   **Documents, Mortgages, and Instruments.**   Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

108.   **Term of Injunctions of Stays.**   Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

109.   **Non-severability of Plan Provisions Upon Confirmation.**   Each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) non-severable and mutually dependent.

110.   **Notice of Subsequent Pleadings.**   Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) any party known to be directly affected by the relief sought by such pleadings; and (c) any party that specifically requests additional notice in writing to the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy

Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

111.    **Post-Confirmation Reports.**    After the Effective Date, neither the Debtors, the Wind-Down Debtors, nor the Plan Administrator shall have any obligation to file with the Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however*, that the Plan Administrator will comply with the U.S. Trustee's quarterly reporting requirements until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

112.    **Post-Confirmation Modifications.**    Without need for further order or authorization of the Court, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, in consultation with the Plan Advisory Committee, expressly reserve their respective rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent

of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

113.    **Plan Classification Controlling.**    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

114.    **Governing Law.**    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

115.    **Applicable Non-Bankruptcy Law.**    The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

116.    **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

117.    **Governmental Approvals Not Required; No Revocation of Permits.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.  As provided in section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license of the Debtors or the Wind-Down Debtors on account of the filing or pendency of the Chapter 11 Cases or the discharge of any debt owed to such governmental unit.

118.    **Notices of Confirmation and Effective Date.**  The Debtors or the Wind-Down Debtors shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Confirmation Hearing Notice within seven Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  For

those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

119.    No later than 10 Business Days after the Effective Date, the Debtors or the Wind-Down Debtors shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times*.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

120.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.    The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

121.    **Exemption from Registration.**  The rights of the holders of the beneficial interests of the Wind-Down Debtors shall not be "securities" under applicable laws; *provided, however*, that if such rights constitute securities, such securities are exempt from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

122.    **Plan Advisory Committee.**  On the Effective Date, a committee comprised of one or more members as determined by the Committee, the Debtors, and BNGL Holdings (the "Plan Advisory Committee") shall be established.  Any members of the Committee who are not members of the Plan Advisory Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from their service as members of

the Committee relating to and arising from their service as members of the Committee consistent with Article XIII.D of the Plan and this Confirmation Order.  The Plan Advisory Committee shall have duties and responsibilities as set forth in the Plan and in the Plan Administrator Agreement, which is included in the Plan Supplement.  Such duties and responsibilities include oversight of the Plan Administrator and the Wind-Down Debtors following the Effective Date.

123.    Following all distributions and other payments made in accordance with the Plan and all outstanding Disputed Claims resolved, the Plan Advisory Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from their service as members of the Plan Advisory Committee.  The Plan Administrator shall consult with the Plan Advisory Committee as described in the Plan Administrator Agreement in connection with the status of the Estates and wind-down process.

124.    **Dissolution of the Creditors' Committee.**  On the Effective Date, the Creditors' Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of (a) prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee and its Professionals, (b) prosecuting and defending any appeal of the Confirmation Order, and (c) to the extent any litigation was commenced by the Committee, prosecuting and defending the Committee's position in such litigation, including claims mentioned in or related to the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Standing and Authorization to Commence and Prosecute Certain Claims on Behalf of the Debtors' Estates* [Docket No. 610].  The Wind-Down

Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date except as set forth in the Plan. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, TCB's DIP Collateral (or the proceeds thereof) or Prepetition TCB Collateral (or the proceeds thereof) may not be used to pay the fees and expenses of the Creditors' Committee advisors without express written consent from TCB (such consent to be provided or not in TCB's sole and absolute discretion); *provided*, that to the extent that the Plan Administrator commences any litigation transferred from the Committee concerning the claims alleged by the Committee in the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Standing and Authority to Commence and Prosecute Certain Actions on behalf of the Debtors' Estates* (including any exhibits thereto), the fees and expenses incurred by the Plan Administrator and its counsel in connection with such litigation shall be payable solely from the Plan Administrator Operating Reserve, pursuant to either (a) a litigation budget agreed to by the Plan Administrator and TCB or (b) approved by the Bankruptcy Court pursuant to a motion, after notice and a hearing.   For the avoidance of doubt, the Plan Administrator is not authorized to spend any proceeds of TCB's DIP Collateral (outside of the Modified Plan Administrator Operating Reserve) for any litigation fees or expenses without TCB's consent and nothing in this Paragraph 124 otherwise alters or modifies the provisions of paragraph 128 hereof.

125.    **Reservation of Rights with Respect to Disputed Issues.**  Solely with respect to the Disputed Issues, all parties' rights are fully reserved under the Second Interim DIP Order and the Final DIP Order, as applicable, and any remaining Disputed Issues that are not resolved prior to the Confirmation Hearing shall be adjourned and resolved by an adversary proceeding,

contested matter, or as set forth in paragraph 128 hereof, as applicable, before the effective date of the Leadenhall Claims Status Notice.

126.    **Foxfield.**    Nothing in the Plan or this Confirmation Order shall be deemed to release, limit, or otherwise affect the liens and other rights of Foxfield at Naaman's Creek Homeowners Association ("Foxfield") in and against the real property located at 1702 Magnolia Court, Garnet Valley, Pennsylvania 19060 (the "Garnet Valley Property"), including but not limited to any rights asserted in the case styled as *Foxfield at Naaman's Creek Homeowners Association vs. Raechelle Eventoff et al.*, Case No. CV-2020-006082 pending in the Court of Common Pleas for Delaware County, Pennsylvania (the "Garnet Valley Case"); *provided* that the Debtors reserve all rights available under bankruptcy and non-bankruptcy law, including those related to the Garnet Valley Property and the Garnet Valley Case.  Upon the Effective Date, none of the injunctions and stays in the Plan, this Confirmation Order, or the Bankruptcy Code (including but not limited to the automatic stay set forth in 11 U.S.C. § 362(a)) shall apply to the continuation of the Garnet Valley Case and the Court's adjudication of disputes in that case, including but not limited to any applicable appeals.  For avoidance of doubt, Foxfield is not a "Releasing Party" or a "Released Party" under the Plan or this Confirmation Order.

127.    **WARN Claimants.**    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the plaintiffs (the "WARN Claimants") party to Adv. Proc. No. 22 50473 MFW (the "WARN Adversary") (i) shall have an aggregate Allowed Administrative Claim of $2,850,000 in full settlement and satisfaction of the Claims asserted in the WARN Adversary (the "WARN Settlement Amount"); (ii) have agreed that receipt of payment, if any, of the WARN Settlement Amount shall be consistent with the terms of the 9019 Settlement, and shall be made only to the extent that such funds are available from the Plan Reserve Account; *provided*, that the

WARN Claimants shall not require the Debtors or any of their successors to fund any reserve on account of the WARN Settlement Amount; and (iii) shall, on the Effective Date, dismiss with prejudice the WARN Adversary.  Each WARN Claimant shall be deemed a Releasing Party and a Released Party.  For the avoidance of doubt, nothing in this paragraph shall amend, alter, or otherwise modify the validity or priorities of pre-petition liens and interests or liens and interests established by the Second Interim DIP Order or the Final DIP Order.

128.    **TCB.**  Notwithstanding anything to the contrary in this Confirmation Order, the 9019 Settlement Order, the Plan, the Disclosure Statement, the Plan Administrator Agreement or any other document or agreement in the Plan Supplement:

(a)    the WARN Claimants shall not receive any distribution under the Plan from TCB's DIP Collateral or the Prepetition TCB Collateral unless and until TCB's DIP Claims and DIP Tail Advance Superiority Claims are paid in full in cash and no portion of the Prepetition TCB Collateral shall be available for distribution to the WARN Act Claimants until the Secured portion of the TCB Prepetition Claims are paid in full in Cash;

(b)    TCB hereby consents that on the Effective Date $750,000 of Unencumbered Assets (or the proceeds thereof) in the aggregate, which for the avoidance of doubt constitute TCB's DIP Collateral, shall be funded to the Plan Administrator Operating Reserve (the "Modified Plan Administrator Operating Reserve") and the Disputed Claims Reserve to implement and effectuate the terms of the Plan; *provided*, that (i) excluding the WARN Claimants and Leadenhall, the payment to holders of any Allowed Administrative Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims pursuant to the Plan shall exclusively be paid from the Modified Plan Administrator Operating Reserve; (ii) holders of any Allowed Administrative Claim that are WARN Claimants or Leadenhall and any holder of an Allowed General Unsecured Claim shall not receive any recovery from the Wind Down Debtors or the Plan Administrator until such time as TCB's DIP Claims and the DIP Tail Advance Superpriority Claims are paid in full in Cash from the Wind-Down Debtors or other third-parties, and the Secured portion of the TCB Prepetition Claims are paid in full in Cash; and (iii) the Wind Down Debtors and Plan Administrator shall have no ability to utilize any of TCB's DIP Collateral (or the proceeds thereof) or Prepetition TCB Collateral (or the proceeds thereof) other than as set forth in this paragraph 128, or as otherwise agreed by TCB after the Effective Date in its sole discretion; *provided further*, that, notwithstanding anything in the Plan or this Confirmation Order, the Disputed Claims Reserve Amount shall exclude any amounts with respect to any Claims held by Leadenhall;

(c)    consistent with the Plan, and except as provided in paragraph 128(b) hereof, until such time as TCB's DIP Claims and the Secured portion of the TCB Prepetition Claims are paid in full, neither the Plan Reserve Account, the Disputed Claims Reserve, the Settlement

Reserve nor the Wind-Down Account shall be funded with any of TCB's DIP Collateral (or the proceeds thereof) or Prepetition TCB Collateral (or the proceeds thereof), and, for the avoidance of doubt, except as set forth in paragraph 128(b) hereof, the Plan Reserve Account, the Disputed Claims Reserve, the Settlement Reserve, and the Wind-Down Account shall exclude (i) TCB's DIP Collateral (or proceeds thereof) to the extent that TCB's DIP Claims are not yet paid in full in Cash, (ii) the Prepetition TCB Collateral (or the proceeds thereof), unless and until the Secured portion of the TCB Prepetition Claims have been satisfied in full in Cash, and (iii) the Restricted Cash Collateral or Restricted Cash Accounts, to the extent not already included in clauses (i) or (ii) of this paragraph 128(c);

(d)      the proceeds of the DIP Collateral whether existing prior to the Effective Date or received by the Plan Administrator or Wind Down Debtors after the Effective Date are required to be deposited into a segregated account by the Plan Administrator or Wind-Down Debtors, as applicable (such account, the "DIP Collateral Proceeds Account"), and such DIP Collateral Proceeds Account shall be maintained at TCB until such time as TCB's DIP Claims and/or DIP Tail Advance Superpriority Claims are paid in full in Cash.

(e)      after the Effective Date, the Plan Administrator may submit a request to TCB that funds in excess of the initial $750,000 be released from the DIP Collateral Proceeds Account (such request, a "PA Additional Funding Request") to the Modified Plan Administrator Operating Reserve to support the Plan Administrator's obligations under the Plan and Plan Administrator Agreement; provided, that (i) any PA Additional Funding Request shall specify the requested amount of the additional funding (the "PA Additional Funding Amount") and include supporting documentation and analysis justifying such PA Additional Funding Amount, and (ii) whether any PA Additional Funding Amount will be made available from the DIP Collateral Proceeds Account to the Plan Administrator shall be determined by TCB in its sole and absolute discretion;

(f)      TCB will continue to use commercially reasonable efforts to pursue recovery on the Tail Advances from GNMA; provided, that if TCB has not recovered from GNMA the amount necessary to satisfy the Tail Advances in full and in Cash on the date that is one-hundred and twenty (120) days after the Effective Date (such date, the "TCB Initial Plan Distribution Date"), TCB may file a motion (the "TCB Collateral Release Motion") on fourteen (14) days' notice with the Bankruptcy Court requesting the release of TCB's DIP Collateral in the DIP Collateral Proceeds Account to TCB in satisfaction or partial satisfaction of TCB's DIP Claims and/or the DIP Tail Advance Superpriority Claims (any order of the Bankruptcy Court approving such motion, the "TCB Collateral Release Order"); provided, that TCB shall serve the TCB Collateral Release Motion on the Plan Administrator and the Plan Administrator shall have the right to object to the relief sought thereby.  Upon entry of the TCB Collateral Release Order, such funds shall be released consistent with the terms thereof.  TCB is separately authorized hereunder as of the Effective Date to apply amounts in the Restricted Cash Accounts and any Restricted Cash Collateral held by TCB (excluding any amounts in the DIP Collateral Proceeds Account) as of such date in satisfaction or partial satisfaction of the TCB Prepetition Claims or the TCB's DIP Claims and/or the DIP Tail Advance Superpriority Claims, as applicable; provided, that (i) if TCB's DIP Claims and/or DIP Tail Advance Superpriority Claims are not satisfied in full in Cash from the DIP Collateral Proceeds Account on or as soon as practicable after entry of

the TCB Collateral Release Order, then TCB shall retain all rights and claim priorities as set forth in the Final DIP Order with respect to any additional or further amounts recovered by the Plan Administrator on account of the DIP Collateral that are deposited into the DIP Collateral Proceeds Account as required by this Confirmation Order, (ii) for the avoidance of doubt, on account of TCB's DIP Claims and DIP Tail Advance Superpriority Claims, TCB shall not be entitled to recover from the DIP Collateral Proceeds Account amounts in excess of the TCB's DIP Claims and the DIP Tail Advance Superpriority Claims; and (iii) only parties in interest asserting security interest in or liens on the funds in the DIP Collateral Proceeds Account may object to entry of the TCB Collateral Release Order.  For the avoidance of doubt, upon payment in full of TCB's DIP Claims and DIP Tail Advance Superpriority Claims, TCB shall have no further claims to the TCB DIP Collateral Proceeds Account, and such funds shall promptly be distributed to the Plan Reserve.

(g)     the TCB Initial Plan Distribution Date may be extended for an additional thirty (30)-day period at the discretion of the Plan Administrator (such additional 30-day period, the "PA Extension Period"); *provided*, that any further extension of the TCB Initial Plan Distribution Date beyond the PA Extension Period shall require the written consent of TCB, and any PA Additional Funding Request in connection with such extension shall be subject to the terms of paragraph 128(e) hereof.

129.    **Right to Convert**.  The Plan Administrator, in its sole discretion on behalf of the Wind-Down Debtors, shall have the right to seek a Court Order converting these Chapter 11 Cases to a liquidation pursuant to Chapter 7 of the Bankruptcy Code, and all parties' rights to oppose any such request by the Plan Administrator are reserved.

130.    **Abandonment of Assets**.  The Plan Administrator, in consultation with creditors with security interests in, or liens on, the Plan Administrator Assets, may abandon any Plan Administrator Assets and any time to the extent such Plan Administrator Assets are burdensome and do not provide a benefit to the Wind-Down Debtors or their Estates.

131.    **TIAA.**  In exchange for an agreement by TIAA to support the Plan (including by timely submitting a vote in favor of the Plan) and TIAA promptly paying to the Debtors any Repo Facility Equity Value (as defined in the Final DIP Order) to the extent any exists, in addition to any releases and exculpation afforded to TIAA under the Plan, TIAA and its affiliates, successors, and assigns ("TIAA Releasees") shall be released and discharged from any and all claims and causes of action whatsoever (including liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, existing or arising hereafter, whether in law or equity) against the TIAA Releasees and that are held, or may be asserted, by the Debtors and the Creditors' Committee, and each of their estates, and each of their successors, assigns, and representatives, with respect to the TIAA Agreement and any transactions arising out of or related thereto, and those certain Purchased Mortgage Loans and Servicing Rights (as such terms are defined in the TIAA Agreement), including but not limited to, any transactions, termination, close-out, liquidation or sale thereof, and any property purchased by (or pledged) under the TIAA Agreement.

132.    **United States.**  As to the United States of America ("United States"), nothing in the Plan or this Confirmation Order shall (a) discharge, release, enjoin, bar, impair or otherwise preclude (i) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (ii) any claim of the United States arising after the Confirmation Date, (iii) any obligation or liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Confirmation Date, or (iv) any non-Debtor from any claim, liability, suit, right, or Cause of Action of the United States or (b) affect any setoff or recoupment rights of the United States.  The Debtors, the Wind-Down Debtors, and the Plan Administrator reserve any and all related rights and defenses.

133.    **Fannie Mae.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (i) nothing in the Plan or this Confirmation order shall affect any setoff or recoupment rights of Fannie Mae; *provided* that the foregoing shall not limit the existing rights of any party under applicable law to object to Fannie Mae's claims; and (ii) Fannie Mae does not

consent to, shall not be bound by, and shall be deemed to have opted out of, any releases of non-debtor Entities and any injunction against exercise of any claim or Cause of Action against such Entities, and shall not be a Releasing Party under the Plan or this Confirmation Order; provided that Fannie Mae reserves the right to opt in to being a Releasing Party prior to the Effective Date of the Plan.

134.    **PLS Provisions.**  Certain of the Debtors have been engaged to act as servicer by certain securitization trusts (the "Securitization Trusts") pursuant to certain mortgage servicing agreements and related governing documents with U.S. Bank National Association and/or U.S. Bank Trust Company, National Association, solely in its capacities as Indenture Trustee and Paying Agent (collectively, the "PLS Indenture Trustee"), as summarized in **Exhibit A** attached hereto (collectively, the "PLS Servicing Agreements") and the reverse mortgage securitization subservicing agreements between certain of the Debtors and Compu-Link Corporation d/b/a Celink ("Celink") set forth in **Exhibit B** attached hereto (the "PLS Subservicing Agreements" and together with the PLS Servicing Agreements, the "PLS Agreements").  Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or the Bankruptcy Code, including Section 365 of the Bankruptcy Code, the PLS Agreements shall not be deemed rejected pursuant to the Plan by the applicable Debtors until May 31, 2023 (the "PLS Servicing Rejection Date"); *provided* that upon the request of the PLS Indenture Trustee (such request to occur by May 10, 2023), the PLS Servicing Rejection Date may be extended to June 30, 2023, in the reasonable discretion of the Plan Administrator, if the Debtors have received or are able to access sufficient funds to cover all PLS Incremental Expenses (as defined below).  Upon the occurrence of the PLS Servicing Rejection Date, the PLS Agreements shall be deemed to have been rejected pursuant to the Plan. Any claims, causes of action, or rejection damages on account of any rejection of the PLS

Agreements shall be asserted by the PLS Indenture Trustee and Celink (and any other parties or entities) no later than 10 business days after the occurrence of the PLS Servicing Rejection Date (the "PLS Agreements Rejection Damages Deadline") and any such claims, causes of action, or rejection damages on account of any rejection of the PLS Agreements shall be deemed prepetition unsecured claims and, if allowed, will receive treatment as General Unsecured Claims pursuant to the Plan. The PLS Indenture Trustee's deadline to respond to the Debtors' pending objection, filed at Docket No. 591, to its asserted claims has also been extended to the PLS Agreements Rejection Damages Deadline.

135.    Pursuant to Paragraph 137 below, prior to the occurrence of the PLS Servicing Rejection Date, the Debtors, the PLS Indenture Trustee, and Celink may submit to the Court a joint order that provides for the assumption and assignment of some or all of the PLS Agreements to a new servicer, in which case, such subsequent order of the Court shall govern (the date on which such assumption and assignment occurs, the "PLS Assumption and Assignment Date").

136.    All releases and exculpation of the Debtors and other parties provided for in the Plan and this Confirmation Order, as applicable, shall be effective as of the Effective Date, notwithstanding the date of any rejection of the PLS Agreements; *provided, however*, that the releases shall not release the Debtors' obligation to pay and/or reimburse Celink for the Further Celink Servicing (as defined in the Celink Settlement), the Debtors' obligation to pay and/or reimburse Celink for the subservicing provided under the PLS Subservicing Agreements and any reasonable costs associated with such subservicing to the extent provided in such agreements (the "Celink PLS Subservicing") through the PLS Servicing Rejection Date or the PLS Assumption and Assignment Date, as applicable, and Celink may assert claims against the Debtors or Wind-Down Debtors on account of such Celink PLS Subservicing (the "Celink PLS Subservicing

Claims") and any Additional Celink Administrative Claims (as defined in the Celink Settlement); *provided*, *further*, that the Debtors' rights with respect to any defenses, counterclaims, or cross-claims, against Celink in connection with such Celink PLS Subservicing Claims and Additional Celink Administrative Claims shall be fully preserved.  Upon the occurrence of the PLS Servicing Rejection Date or the PLS Assumption and Assignment Date, as applicable, any claims, causes of action, or any rights arising out of the PLS Agreements on or after the Effective Date shall be released and the Exculpated Parties (as defined in the Plan) under the Plan shall be exculpated as if such actions or facts and circumstances arose prior to the Effective Date; *provided, however*, that, as further set forth in the Settlement Term Sheet, the releases shall not release the Debtors' obligation to pay and/or reimburse Celink for the Further Celink Servicing, the Debtors' obligation to pay the Celink PLS Subservicing Claims, or Celink's right to assert any Additional Celink Administrative Claims and Celink PLS Subservicing Claims against the Debtors or the Wind-Down Debtors; *provided*, *further*, that the Debtors' rights with respect to any defenses, counterclaims, or cross-claims, against Celink in connection with such Additional Celink Administrative Claims and Celink PLS Subservicing Claims shall be fully preserved.  The PLS Indenture Trustee and Celink hereby agree and consent to such releases and exculpation.  Notwithstanding the releases furnished herein and in the Plan, the Debtors and Wind-Down Debtors shall be liable for any breach of the PLS Agreements in accordance with the terms and conditions thereof, *provided*, that any claims in respect of such breaches shall be payable only from applicable insurance and surety bond coverages, if any, maintained by the Debtors and Wind-Down Debtors until the PLS Servicing Rejection Date (it being understood that the premiums to maintain such coverages shall be included in the PLS Incremental Expenses, as defined below).

137.   Each Securitization Trust shall pay, in the manner and from the sources and accounts specified in this paragraph, all of the reasonable direct and indirect incremental costs, expenses, or liabilities to be incurred by the Debtors or the Wind-Down Debtors, as applicable, in respect of their performance under the PLS Agreements and maintenance of certain of the Debtors' operations related to the PLS Agreements from the Effective Date until the occurrence of the PLS Servicing Rejection Date or the PLS Assumption and Assignment Date, including, for the avoidance of doubt, subservicing fees, indemnification claims, and any other reasonable costs due and payable to Celink in connection with the subservicing services provided to the Debtors or Wind-Down Debtors by Celink, in each case pursuant to and in accordance with the PLS Subservicing Agreements, as applicable (collectively, the "PLS Incremental Expenses"); *provided* that the PLS Incremental Expenses shall be paid in advance in an amount equal to (i) $659,600 for May expenses payable in May plus $73,600 for May expenses payable in June and, (ii) if the PLS Servicing Rejection Date is extended as provided in paragraph 134 above, an amount to be determined by the Debtors for June expenses, which amount the Debtors shall share with the PLS Indenture Trustee in advance of May 10, 2023, or as reasonably practicable thereafter; *provided further* that the PLS Incremental Expenses for the month of June described above shall be paid within two days of the PLS Indenture Trustee's request to extend the PLS Servicing Rejection Date to June 30, 2023 as set forth above; *provided further* that the Securitization Trusts shall additionally pay $35,300 in incremental workforce related expenses incurred by the Debtors in April 2023 in order to retain staffing needed to perform servicing functions from and after the Effective Date (the "April Expenses").  In addition to, and without limiting the Debtors' ability to claim reimbursement for the PLS Incremental Expenses as set forth above, the Debtors shall also be entitled to assert claims for, and receive payment in respect of, indemnification in respect of

third-party claims ("Indemnification Payments") in accordance with the terms and conditions of the PLS Agreements.  Any servicing fees or "float" investment earnings accrued and paid or otherwise credited to the Debtors, the Wind Down Debtors or the Plan Administrator for the period beginning on the Plan Effective Date and through the PLS Servicing Rejection Date shall be credited against the Securitization Trusts' obligation to pay PLS Incremental Expenses (*provided* that, for the avoidance of doubt, any subservicing fees payable to Celink shall constitute PLS Incremental Expenses). In order to most efficiently give effect to the payment of the PLS Incremental Expenses, the April Expenses, and Indemnification Payments, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall be authorized to net funds from collections related to the applicable Securitization Trust or withdraw funds from the bank accounts of, or related to, the applicable Securitization Trusts, in each case, to cover such PLS Incremental Expenses with respect to each PLS Agreement.  Notwithstanding the foregoing, to the extent the PLS Incremental Expenses actually incurred by the PLS Servicing Rejection Date or PLS Assumption and Assignment Date (as applicable) are ultimately equal to an amount less than the amounts withdrawn by the Debtors from such accounts, the excess amounts withdrawn by the Debtors shall be returned to the applicable accounts as soon as reasonably practicable following the PLS Servicing Rejection Date or PLS Assumption and Assignment Date (as applicable).  To the extent that such funds are insufficient to pay the PLS Incremental Expenses and the April Expenses, such expenses shall be paid by the PLS Indenture Trustee as Extraordinary Expenses or Servicing Transfer Costs (as such terms are defined in the applicable indentures related to each of the PLS Servicing Agreements, excluding any annual caps or other conditions imposed on amounts paid for such costs and expenses) to either the Wind-Down Debtors or Celink (as applicable).  The PLS Indenture Trustee hereby acknowledges and agrees that the Debtors intend to withdraw, on

May 1, 2023, $733,200 in PLS Incremental Expenses and $35,300 to cover payment in full amount of the April Expenses.  The PLS Indenture Trustee hereby acknowledges that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will use commercially reasonable practices to allocate PLS Incremental Expenses incurred in accordance with their performance under each applicable PLS Agreement; *provided, however*, that to the extent that any Securitization Trust fails to fund (or does not have sufficient funds available to fund) such Securitization Trusts' allocated Incremental Expenses, then the shortfall shall be paid and borne by the other Securitization Trusts that did not experience such a shortfall since the PLS Incremental Expenses would not be reduced if there were one or more fewer Securitization Trusts.  Prior to implementing any proposed allocation, the Debtors, the Wind Down Debtors, or the Plan Administrator, as applicable, will furnish the proposed allocation to the Indenture Trustee, and Celink solely with respect to PLS Incremental Expenses incurred in connection with the PLS Subservicing Agreements, for their respective review and comment, as applicable, which shall be taken into consideration by the applicable party in making its final allocation determination, which determination shall be binding on the Indenture Trustee and the Securitization Trusts absent manifest error.  Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or the Bankruptcy Code, the Debtors or Wind-Down Debtors shall have the obligation to pay or reimburse Celink for the Further Celink Servicing, pay the Celink PLS Subservicing Claims, and Celink shall have a right to assert any Additional Celink Administrative Claims until the occurrence of the PLS Servicing Rejection Date or the PLS Assumption and Assignment Date, as applicable; *provided* that the Debtors' rights with respect to any defenses, counterclaims, or cross-claims against Celink in connection with such Celink PLS Subservicing Claims and Additional Celink Administrative Claims shall be fully preserved.

138.    Prior to the PLS Servicing Rejection Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, the PLS Indenture Trustee and Celink may submit a proposed final order to this Court providing for the transition of servicing under the PLS Agreements prior to any rejection of the PLS Agreements (the "Proposed Settlement Order").  To the extent that the Proposed Settlement Order contains any findings of fact that are required in connection with such order, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will file such order on the Court's docket for these cases no later than 7 days prior to the date by which the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, seek entry of the relief provided in such order.  If any person or entity objects to the Proposed Settlement Order, including any proposed findings of fact or the relief requested in the Proposed Settlement Order, such person or entity shall file an objection and serve it on the Plan Administrator, the PLS Indenture Trustee, and Celink no later than 7 days after such order was filed on the Court's docket.  If no objection is received, counsel to the Plan Administrator, with the consent of the PLS Indenture Trustee, Celink and the U.S. Trustee, shall submit a certification of counsel that no objections have been received and that the parties request that the Court enter the Proposed Settlement Order without the need for a hearing.  If an objection is received, the Plan Administrator shall request a hearing to adjudicate such objections.  Any costs, expenses, or liabilities of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, including any out-of-pocket expenses for counsel, that arise in connection with resolving any objection shall be deemed to be PLS Incremental Expenses and subject to the payment provisions as set forth above.  The PLS Indenture Trustee and Celink hereby consent to this Court's jurisdiction in connection with the PLS Agreements.  The Debtors shall have no obligation to serve the Proposed Settlement Order on any party other than to file a copy of the Proposed Settlement

Order on the Court's docket and serve the U.S. Trustee.  The PLS Indenture Trustee shall be responsible for noticing and communicating with its own relevant constituents.

139.    **Pinelawn Landlords.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rights of Damianos Pinelawn LLC and 41 Pine Lawn Dr LLC (the "<u>Pinelawn Landlords</u>") to setoff or recoup the security deposit posted by the Debtors with the Pinelawn Landlords against the Pinelawn Landlords' claims against the Debtors as asserted in the amended proof of claim filed by the Pinelawn Landlords are not terminated, impaired, or limited by the Plan or any assignment of rights by the Debtors to others pursuant to the Plan, and such rights continue to be preserved pursuant to Section 553 of the Bankruptcy Code, if applicable, except that no setoff or recoupment can actually be carried out absent entry of an order of this Court lifting any applicable injunctions against setoff or recoupment imposed by the Plan or Confirmation Order.   For the avoidance of doubt, any defenses and other rights of the Debtors, Wind-Down Debtors, the Plan Administrator, and each of their estates, as applicable, are reserved.

140.    **Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Allowed Claims of Bexar County, Gregg County, Harris County, Morris CAD, Navarro County, Val Verde County, Clear Creek Independent School District, Brazoria County Tax Office, Bosque County, Real County, and White Oak ISD (collectively, the "<u>Texas Taxing Authorities</u>") with respect to ad valorem taxes (such Allowed Claims, the "<u>Texas Taxing Authority Claims</u>") shall be classified as "<u>Other Secured Claims</u>".  To the extent not otherwise paid, the Texas Taxing Authorities' ad valorem taxes shall be paid in full in cash on the later of (a) within ten business days after the Effective Date, or as soon thereafter as is reasonably practical and (b) when due pursuant to applicable law (subject to any applicable extensions, grace periods, or similar rights under the law and subject to the Debtors' and the Wind-

Down Debtors' rights to contest such taxes), without the need of the Texas Taxing Authorities to file an administrative expense claim. The Texas Taxing Authority Claims shall include all accrued interest properly charged under applicable law through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Taxing Authority Claims; provided that the defenses and rights to object to such Claims or to the inclusion of such interest in such Claims are fully reserved by the Debtors and the Wind-Down Debtors. The Texas Taxing Authorities shall retain their prepetition and postpetition tax liens, if any and to the extent they are entitled to such liens, against the Debtors' property, until the taxes are paid in full. All rights and defenses of the Debtors and the Wind-Down Debtors under applicable bankruptcy and non-bankruptcy law are reserved and preserved.

141. **Effect of Non-Occurrence of Conditions to the Effective Date.** If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, or Claims against, or Interests in, the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

142. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code; *provided*, that any provisions under the Plan that are subject to the effective date of the Leadenhall Claims Status Notice shall not be deemed effective until the effective date of the Leadenhall Claims Status Notice.

143. **Waiver of Stay.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

144. **References to and Omissions of Plan Provisions.** References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

145. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

146. **Effect of Conflict.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

147. **Final, Appealable Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

148. **Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and

related to, these Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

Dated: April 28th, 2023
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE