# ATE MIN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| REVERSE MORTGAGE INVESTMENT TRUST INC., *et al.*, | Case No. 22-11225 (MFW) |
|  | (Jointly Administered) |
| Reorganized Debtors. |  |
|  | **Re: Docket Nos. 724, 874, 889** |

### TEXAS CAPITAL BANK'S REPLY TO OBJECTION OF LEADENHALL LIFE INSURANCE LINKED INVESTMENTS FUND PLC AND LEADENHALL CAPITAL PARTNERS LLP TO MOTION FOR ENTRY OF AN ORDER TO RELEASE TCB DIP COLLATERAL

Texas Capital Bank ("TCB"), by and through its undersigned counsel, files this reply (the "Reply") to the *Objection of Leadenhall Life Insurance Linked investments Fund Plc and Leadenhall Capital Partners LLP to Texas Capital Bank's Motion for Entry of an Order to Release Certain DIP Collateral* [Docket No. 889] (the "Objection") filed in response to the *Motion by Texas Capital Bank for Entry of an Order to Release TCB's DIP Collateral* [Docket No. 874] (the "Motion").[1]  For the reasons set forth herein and in the Motion, the Objection should be overruled and the Motion should be granted. In support of the Reply, TCB respectfully states as follows:

### Reply

1. Almost a year after the entry of the highly negotiated Second Interim DIP Order by this Court,[2] Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Motion.

[2] "Second Interim DIP Order" as used herein means *Second Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Certain Debtors' Use of Cash Collateral; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket Nos. 170, 170-2, 171-1].

Fund Plc (collectively, "Leadenhall") seek to revise history and rewrite the unambiguous, express language of the Second Interim DIP Order that provides TCB with first priority priming liens on the Unencumbered Assets, including claims against Compu-Link Corporation (the "Celink Claims"). Pursuant to paragraph 6 of the Second Interim DIP Order, TCB is granted a first priority lien on the "Unencumbered Assets." *See* Second Interim DIP Order, ¶ 6(a). The Second Interim DIP Order further expressly clarifies that the term "Unencumbered Assets" as used in the Second Interim DIP Order includes "***all claims and/or causes of action of any Debtors against Celink* . . . .**" Second Interim DIP Order, ¶ 6(d) (emphasis added).

2. Leadenhall was intimately involved in the negotiation and drafting of the Second Interim DIP Order and affirmatively consented to this Court's entry of the Second Interim DIP Order after good faith, arm's length negotiations among the Debtors, TCB, Leadenhall, and Starwood. By consenting to entry of the Second Interim DIP Order, Leadenhall consented to the extent and priority of the DIP Liens granted to TCB thereunder. Importantly, even if Leadenhall maintained a prepetition lien on the Celink Claims, by consenting to the entry of the Second Interim DIP Order, Leadenhall consented to TCB's DIP Liens priming Leadenhall's liens (if any) on the Celink Claims.

3. Based upon the terms of the Second Interim DIP Order, TCB loaned not less than $28,689,673.73 million of DIP Tail Advances to the Debtors. All DIP Tail Advances funded by TCB were funded in reliance on the Second Interim DIP Order shortly after entry of the order; TCB did not fund any additional amounts in connection with the Final DIP Order. Consistent with the terms of the Second Interim DIP Order TCB was and is entitled to "rely upon the protections granted [in the Second Interim DIP Order] and by section 364(e) of the Bankruptcy Code . . . [and] [a]ny modification or reversal shall not affect the validity and enforceability of any advances

previously made or made hereunder, or lien, claim or priority authorized or created [by the Second Interim DIP Order]." Second Interim DIP Order, ¶ 36.

4. Remarkably, through the Objection, Leadenhall seeks to set aside the express terms of the Second Interim DIP Order even though Leadenhall actively negotiated the Second Interim DIP Order, and consented to entry of such order. It was only after TCB funded the DIP Tail Advances in reliance on the terms of the Second Interim DIP Order, and after GNMA exercised its rights against Leadenhall's primary collateral, the Debtors' MSRs, to remove the MSRs from the Debtors' estates, that Leadenhall raised so called "Disputed Issues" as to what assets where subject to TCB's first priority DIP Liens. In connection with the Final DIP Order (which again, expressly provides TCB with the same first priority liens on the Celink Claims on a final basis, *see* Final DIP Order, ¶ 8), Leadenhall included a reservation of rights as to certain "Disputed Issues," which purportedly included a dispute as to which party has a priority lien on the proceeds of the Celink Claims. Final DIP Order, ¶ 5, n.4.

5. However, the inclusion of this reservation of rights in the Final DIP Order does not retroactively unwind or rewrite the terms of the Second Interim DIP Order entered by this Court. TCB permitted such reservation in the Final DIP Order (instead of litigating at that time), because TCB was optimistic that GNMA and other governmental units would honor their commitments and TCB would recover in full from its other DIP Collateral. This would have rendered any dispute around the Celink Claims or the proceeds thereof unnecessary. Unfortunately, due to the manner in which these chapter 11 cases played out, TCB, notwithstanding its first priority position, will only recover approximately $4.5 million on account of its approximately $28,689,673.73 of DIP Tail Advances.[3] Regardless, Leadenhall's inclusion of a reservation of rights in the Final DIP

---

[3] On October 4, 2023, TCB initiated litigation against GNMA in the District Court for the Northern District of Texas seeking to recover on the amount of the DIP Tail Advances held by GNMA (Case No. 2:23-cv-00156).

3

Order does not rewrite, modify, amend or otherwise alter the express terms and protections of the Second Interim DIP Order—such reservation merely preserved Leadenhall's ability to bring this issue before this Court as it has now done. In reality, through the Objection, Leadenhall is making a thinly veiled attempt to seek reconsideration of the Second Interim DIP Order.[4]

6. At bottom, Leadenhall should be held to its agreement in the Second Interim DIP Order, and its attempt to overturn and/or reconsider an order to which it consented should be summarily rejected. TCB extended the DIP Tail Advances as a good faith lender in reliance on its first priority liens on, among other collateral, the Celink Claims, and TCB should be afforded the protections provided to post-petition lenders pursuant to section 364(e) of the Bankruptcy Code as set forth in the Second Interim DIP Order. This Court should not permit Leadenhall to opportunistically seek to disregard the plain terms of this Court's order and retroactively revisit the bargain reflected in the Second Interim DIP Order.

### I. Unambiguous Language in Second Interim DIP Order Provides TCB with Senior Liens on the Celink Claims.

7. "[W]here the plain terms of a court order unambiguously apply, . . . they are entitled to their effect." *Travelers Indem. Co.* v. *Bailey*, 557 U.S. 137, 150–51 (2009). "If it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent, it is all the clearer that a court should enforce a court order, a public governmental act, according to its unambiguous terms." *Id*. Courts will find "a provision in a [court order] is ambiguous only when, from an objective standpoint, it is reasonably

---

The Proposed Order provides that TCB will return any excess funds it recovers on account of the DIP Tail Advances from GNMA in connection with this litigation to the estates.

[4] However, Leadenhall did not pursue the proper procedural mechanism to seek reconsideration of the Second Interim DIP Order, likely because Leadenhall is well aware it cannot satisfy the strict standard applicable under Rule 60 of the Federal Rules of Civil Procedure (the "Federal Rules").

susceptible to at least two different interpretations." *In re Molycorp, Inc.*, 562 B.R. 67, 79 (Bankr. D. Del. 2017) (internal citations omitted) (finding provision in debtor-in-possession financing order was not ambiguous and could not be interpreted as a cap on fees for creditors' committee counsel in part because language was typical of other carve-out provisions); *see also In re NorthEast Gas Generation, LLC*, 639 B.R. 914, 923–24 (Bankr. D. Del. 2022) (finding that debtor was not seeking a minor clarification of the plan necessary to fill a gap or further the intent of the parties, but was instead seeking to change the unambiguous terms of the plan, which had been negotiated and drafted among sophisticated parties and must be enforced as written).

8.  Here, the Second Interim DIP Order, an order that Leadenhall reviewed, negotiated, and consented to the entry of, is a clear and unambiguous order and its terms must therefore be read and interpreted in accordance with their plain language and meaning. The order provides that TCB's DIP Tail Advances shall be secured by "first priority valid, perfected, enforceable, and unavoidable liens on and security interests in" the Unencumbered Assets, which provision cross references the items listed in Exhibit E of the attached DIP Notes Term Sheet. Second Interim DIP Order, ¶ 6(a). Exhibit E includes the Celink Claims as an Unencumbered Asset. *See* Second Interim DIP Order, DIP Notes Term Sheet, Ex. E.

9.  Leadenhall makes several claims to try to deflect from the plain meaning of the Second Interim DIP Order. First, Leadenhall argues that Exhibit E includes a disclaimer that the listed items are subject to continued review, and as a result of Leadenhall's prepetition liens, the Celink Claims are not unencumbered and, therefore, not subject to TCB's DIP Liens. Leadenhall Obj., ¶ 4. Second, Leadenhall asserts that TCB cannot use the "mistaken inclusion" of an asset on an exhibit to Leadenhall's term sheet as a waiver of Leadenhall's rights. Leadenhall Obj., ¶ 12. And finally, Leadenhall creates the strawman that TCB is seeking to eliminate, release or

extinguish Leadenhall's prepetition liens without honoring Leadenhall's due process rights. Leadenhall Obj., ¶¶ 7–12.

10. But all these theories miss the mark entirely. ***First***, there is no release or extinguishment of Leadenhall's prepetition liens, and TCB has never asserted anything to the contrary. Stated simply, it is irrelevant whether or not Leadenhall's prepetition liens encumber the Celink Claims, because the Second Interim DIP Order expressly granted TCB a <u>first priority lien</u> on the Celink Claims. ***Second***, TCB does not rely solely on an exhibit to Leadenhall's term sheet to assess, assert or support TCB's security interests on the Celink Claims—recognizing that the Celink Claims were a valuable asset of the Debtors' estates at the time, TCB expressly identified that this asset was part of TCB's DIP Collateral, which TCB held a first priority lien on. It cannot seriously be disputed by Leadenhall otherwise upon a review of the Second Interim DIP Order. The Second Interim DIP Order <u>expressly</u> provides TCB with a first priority lien on the Celink Claims separate and apart from any language in Exhibit E to the DIP Notes Term Sheet, or any other term sheet: "Unencumbered Assets also includes ***all claims and/or causes of action of any Debtors against Celink*** . . . ." Second Interim DIP Order, ¶ 6(d) (emphasis added). ***Third***, for all its imagination and creativity, the Objection fails to address this simple, unambiguous language in the Second Interim DIP Order, and entirely fails to acknowledge that the terms of the Second Interim DIP Order control to the extent of any inconsistency between the term sheets and the Second Interim DIP Order.[5] For these reasons, the Objection must be overruled.

---

[5] As noted by Leadenhall, to the extent that there is any inconsistency between the term sheets and the Second Interim DIP Order, the order controls. Second Interim DIP Order, ¶ 74; Leadenhall Obj., ¶ 4. Regardless of any language or disclaimer in Exhibit E to the DIP Notes Term Sheet, paragraph 6(d) in the Second Interim DIP Order unambiguously includes the Celink Claims as part of the "Unencumbered Assets," which provides TCB a first priority lien on the Celink Claims and subordinates Leadenhall's liens, if any.

11.     Separately, Leadenhall also fails to explain away its consent to the entry of the Second Interim DIP Order, including the explicit language in paragraph 6(d). Indeed, the Debtors filed two versions of the Second Interim DIP Order [Docket Nos. 152, 166] ahead of the DIP hearing on December 8, 2022, both of which included paragraph 6(d) with TCB's first priority liens on the Celink Claims. Leadenhall neither filed an objection regarding this provision, nor voiced its objection at the hearing as to the extent of TCB DIP Liens. *See e.g.*, Dec. 8, 2022 Hr'g Tr. 22:13–23:12; 27:16–17; 30:9–31:7 [Docket No. 212]. To the contrary, Leadenhall consented to entry of the Second Interim DIP Order, and the Debtors filed a Certification of Counsel, indicating that the Debtors received and incorporated informal comments from TCB and Leadenhall, among other parties, and Leadenhall consented to the entry of the Second Interim DIP Order. *See Certification of Counsel Regarding Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105, 361, 363, 364 and 507 of the Bankruptcy Code, (I) Authorizing the Debtors to Obtain Post-petition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 169]. This Court should not condone Leadenhall's attempt through the Objection to take another bite out of TCB's apple and retroactively assert rights regarding the Celink Claims after Leadenhall has already consented to the order that granted TCB a first priority lien on this asset.

12.     Leadenhall argues in the Objection that Leadenhall adequately reserved its rights as to certain "Disputed Issues" in the Final DIP Order, which Leadenhall states encompasses disputes related to the Celink Claims. Leadenhall Obj., ¶¶ 5–6; Final DIP Order, ¶ 5, n.4. Again, Leadenhall misfires. As an initial matter, the plain language of the purported reservation of rights in the Final DIP Order does not operate to confirm or "recognize" the existence of any dispute, nor does it dispose of any issues—it merely preserves Leadenhall's ability to come before this Court

to contest the effect of the Second Interim DIP Order. Leadenhall Obj., ¶ 5. Moreover, as set forth herein, TCB funded the DIP Tail Advances pursuant to the Second Interim DIP Order—not the Final DIP Order—and, therefore, the Second Interim DIP Order is the operative and relevant order that granted TCB its first priority liens. The Second Interim DIP Order does not contain any such reservation of rights or dispute by Leadenhall as to the extent of TCB's DIP Liens.

## II. TCB is Entitled to All the Benefits and Protections of Section 364(e) as a Good Faith Post-Petition Lender.

13. The Third Circuit Court of Appeals has recognized that assurances and commitments made to a good faith lender pursuant to section 364 of the Bankruptcy Code must be honored. *See In re Swedeland Dev. Grp.*, 16 F.3d 552, 561 (3d Cir. 1994) (noting that section 364(e) "seek[s] to overcome people's natural reluctance to deal with a bankrupt firm whether as a purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge.") quoting *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982). The purpose behind section 364(e)'s bar to invalidating approved financing orders absent a stay pending appeal is to protect a party's good faith reliance on the effect and validity of a bankruptcy court's order in extending credit. 11 U.S.C. § 364(e); *see In re Main, Inc.*, 239 B.R. 59, 72 (Bankr. E.D. Pa. 1999); *see also Kham & Nate's Shoes No. 2, Inc.* v. *First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990) (finding that section 364(e) prevents courts from "backtracking on promises [to lenders] absent bad faith, which is a narrow exception"); *In re Western Pacific Airlines, Inc.*, 181 F.3d 1191, 1195 (10th Cir. 1991) (finding section 364(e) "prohibits not only the outright invalidation of a lien or priority where the challenging party has

failed to seek a stay but also modification of the terms of a post-petition lender's bargained-for collateral").

14.     Here, the Second Interim DIP Order expressly provides that TCB is a good faith lender pursuant to section 364(e) and any subsequent modification of the order will "not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby."  Second Interim DIP Order., ¶¶ H(ix), 36.  TCB extended credit to the Debtors in good faith and in reliance on its DIP Liens granted under the Second Interim DIP Order, including the bargained-for first priority liens on the Celink Claims.  Therefore, section 364(e) of the Bankruptcy Code prohibits this Court from disturbing or undermining the protections granted to TCB in the Second Interim DIP Order.

## Conclusion

15.     For the reasons stated above, the Court should overrule the Objection, grant the relief requested in the Motion, and enter the Proposed Order.

## Reservation of Rights

16.     TCB hereby reserves all its rights, claims, defenses, and remedies in this proceeding or any other forum, including the right to amend, modify, or supplement this Reply, including, without limitation, based upon any additional information discovered prior to or at any hearing on the Motion, and to assert such other and further rights or claims prior to the final adjudication of the matter.  TCB does not waive, and hereby expressly preserves: (a) any obligation owed to TCB; (b) any right or rights of action that it has or may have against the Debtors, their successors, or any other person or persons; and (c) any and all rights and remedies at law or in equity available to TCB against the Debtors and any of their affiliates or subsidiaries, or any other person or entity.

| | |
|---|---|
| Dated:  October 30, 2023<br>         Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br> /s/ Nicolas E. Jenner<br>Richard S. Cobb (No. 3157)<br>Nicolas E. Jenner (No. 6554)<br>Howard W. Robertson (No. 6903)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: cobb@lrclaw.com<br>         jenner@lrclaw.com<br>         robertson@lrclaw.com<br><br>- and -<br><br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Kenneth S. Ziman, Esq. (admitted *pro hac vice*)<br>John T. Weber, Esq. (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>Email: kziman@paulweiss.com<br>         jweber@paulweiss.com<br><br>*Counsel for Texas Capital Bank* |